# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| AGRIPROCESSORS, INC. | ) | |
| | ) | BANKRUPTCY NO. 08-2751 |
| Debtor. | ) | |
| | ) | |
| JOSEPH E. SARACHEK, in his capacity as | ) | |
| CHAPTER 7 TRUSTEE, | ) | ADVERSARY NO. 10-09179 |
| | ) | |
| Plaintiff. | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| RICARDO GOLDSMITH, p/k/a | ) | |
| RICARDO GOLDSCHMIDT, and | ) | |
| FIME-PAK, LTD. | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER RE: MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT**

The Chapter 7 Trustee brought this adversary proceeding against Defendants, Ricardo Goldsmith and Fime-Pak, LTD, alleging that Defendants received fraudulent conveyances or preferential transfers in the amount of $168,804.09. Defendants made a Motion to Dismiss, arguing that this Court does not have personal jurisdiction. Alternatively, Defendants moved for summary judgment, arguing that Trustee's claims fail as a matter of law. The Court held a telephonic hearing on July 29, 2013. Mario Aieta and Bob Gainer appeared on behalf of Defendants. Nick Kilburg appeared on behalf of Trustee, Joseph E. Saracheck. After hearing arguments, the Court took all matters under advisement. These are core proceedings under 28 U.S.C. § 157(b)(2)(F) and (H).

## STATEMENT OF THE CASE

Trustee's Complaint seeks to recover $168,804.09 as either fraudulent transfers under 11 U.S.C. § 548 or as preferential transfers under 11 U.S.C. § 547(b). Defendants move for dismissal or, alternatively, summary judgment. Defendants contend that dismissal is appropriate because they are not subject to the personal jurisdiction of this Court. In the alternative, Defendants moved for summary judgment. Defendants assert that, under the undisputed factual record, the transfers were in the ordinary course of business and therefore cannot be preferential transfers. Fime-Pak separately argues that it is entitled to summary judgment because it never received funds from Debtor. Goldsmith additionally contends that Debtor received the value of meat slaughtering services, so there are no fraudulent transfers.

Trustee resists Defendants' arguments for dismissal based on lack of personal jurisdiction. Trustee and Defendants arguments show that there are no material issues of fact regarding the preferential transfer and fraudulent transfer claims. Trustee does not resist summary judgment for Fime-Pak.

Based on these arguments and the record, the Court grants Defendant's unresisted Motion for Summary Judgment for Defendant Fime-Pak. The Court denies Goldsmith's Motion to Dismiss finding that the arguments through his material participation in the litigation. The Court also denies Goldsmith's Motion for Summary Judgment because there are genuine issues of material fact regarding his ordinary course of business defenses for preferential transfers. There are additional questions as to whether Debtor received reasonable equivalent value, precluding Trustee's fraudulent conveyance claims.

## FACTUAL BACKGROUND

Debtor owned and operated one of the nation's largest kosher meatpacking and food-processing facilities in Postville, Iowa. On November 4, 2008, Debtor filed a Chapter 11 petition in the Bankruptcy Court for the Eastern District of New York. Debtor's bankruptcy petition and accompanying documents recited that its financial difficulties resulted from a raid conducted by U.S. Immigration and Customs Enforcement. The raid led to numerous federal criminal charges, including those against Agriprocessor's President Sholom Rubashkin.

The court approved the appointment of Joseph E. Saracheck as the Chapter 11 Trustee. The court concluded that appointing a trustee was necessary under 11 U.S.C. § 1104(a)(1), "for cause, including fraud, dishonest, incompetence, or gross mismanagement of the affairs of the debtor by current management." The court later transferred the case to this Court on December 15, 2008. This Court converted the case to a Chapter 7 bankruptcy. The U.S. Trustee for this region retained Mr. Sarachek as the Chapter 7 Trustee.

Trustee brought this action against Defendants seeking recovery of preferential transfers or fraudulent conveyances on November 1, 2010. After Trustee's significant effort to obtain service, Defendants Answered and filed a Statement of Corporate Ownership on January 12, 2012. Defendants' Answer asserts "[t]he Bankruptcy Court lacks in-personam or personal jurisdiction over the Defendants" as its seventeenth defense. The Court held a scheduling conference on January 20, 2012. Defendants filed a Motion for Pro Hac Vice Admission of their out-of-state lawyers on April 3, 2012. The parties engaged in discovery for over a year and a half, which included Defendants four Motions to Extend Discovery Deadlines. Defendants then filed the alternative motions on June 24, 2013.

Richardo Goldsmith is the sole owner and director of Fime-Pak Ltd. Goldsmith is a citizen and resident of Israel. He claims he has only been to the United States once. Fime-Pak is

an Israeli business. St. George, Inc. is a company that provided ritual slaughter services, and authorized Fime-Pak, and Goldsmith, to represent St. George. St. George is a company organized in Panama and is not a defendant in this case. Goldsmith thus worked on behalf of St. George, and the ritual slaughtering invoices list St. George as the service-provider.

The parties and transfers relevant to the case are further complicated by the fact that St. George performed slaughtering services for another company, Establecimientos Colonia S.A. ("Colonia"), before November 2007. Colonia used St. George's slaughtering services for the meat it shipped to Debtor. After Debtor paid Colonia for meat and delivery, Colonia sent payment to St. George for its slaughtering services. In November 2007, Marfig, a Brazilian-based, multi-national food production company, acquired Colonia. This resulted in an alteration of the billing relationships. After November 2007, St. George billed Debtor for slaughtering services directly. Trustee argues that Debtor did not receive value for these payments.

The type of ritual slaughter involved in this case is Glatt Kosher. The ritual slaughter involved in Glatt Kosher processing is carefully managed and performed. St. George claims to have assembled and transported teams of qualified Glatt Kosher butchers, supervisors, and inspectors that were Jewish-Israeli trained and authorized by the Israeli Rabbinate.

Yosi Rubashkin, one of several Rubashkin family members involved in Agriprocessors, arranged for St. George's slaughter services at Colonia's Uraguay facility. Colonia or St. George shipped the meat to be delivered to A.A. Rubashkin & Sons in New York and claim a part of it went to Debtor. St. George addressed the billings to "Rubashkins," and Agriprocessors processed and paid the invoices.

The disputed transfers at issue include three checks payable to "Ricardo Goldsmith" totaling $168,804.09: check number 4520, dated June 27, 2008 for $50,000; check number 4694,

4

dated August 11, 2008 for $58,590.83; and check number 4806, dated September 18, 2008 for $60,213.26. Debtor never paid the amounts due in full until August 11, 2008. Defendants state that, during their financial relationship, Debtor normally made some or full payment to St. George within 45 days. Defendants admit, however, that six payments made after November 2007 were made by Debtor on the following durations: 25 days, 58 days, 18 days, 9 days, 28 days, and 50 days. The last three are at issue here.

Trustee's financial advisor and day-to-day manager of Debtor after bankruptcy was Marc Ross. Ross provided an affidavit noting that he was aware Debtor made payments to Ricardo Goldsmith. He noted Debtor had received nothing of any value from Goldsmith or Fime-Pak. Ross further stated he was aware only of invoices to A.A. Rubashkin & Sons, but nothing to Debtor. He also noted the absence of any evidence of a longstanding business relationship between Defendants and Debtor. Defendants argue that this Court lacks personal jurisdiction over Defendants because Defendants do not have sufficient contacts with the State of Iowa.

Regarding the merits of this case, Defendants argue that the checks were not preferential transfers because Debtor paid them in the ordinary course of business. In support of that argument, Defendants contend that the price Debtor paid was reasonable, and the payments made were generally consistent. Defendants also argue that the transfers were not fraudulent because they provided value from St. George to Debtor. Debtor, they claim, paid for the service of ritual slaughtering, not the delivery of a product.

Trustee argues that Defendants' contact with Debtor, when considered as a whole, is enough to establish minimum contacts for personal jurisdiction. Alternatively, Trustee argues that Defendants waived their ability to object to personal jurisdiction issues by engaging in extensive discovery in this case. Trustee argues that the payments were not consistent and

5

therefore not made in the ordinary course of business.  Additionally, Trustee highlights the fact that Debtor paid invoices from St. George in full during the preferential period when it previously paid only a portion of the full invoice price.  Trustee maintains that the transfers are fraudulent because there is no evidence that the value was received for those services; instead, Trustee argues that another business received that value.

The parties agree that Fime-Pak should be dismissed from this case for lack of involvement in the disputed transactions.  The Court addresses the parties' disputes regarding Defendant Goldsmith as follows.

## CONCLUSIONS OF LAW AND DISCUSSION

### I. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction

Once the defendant denies jurisdiction, the plaintiff has the burden to show that the Court has personal jurisdiction.  Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004).  The Court can consider pleadings, affidavits, and any exhibits in making a personal jurisdiction determination.  Pangaea, Inc. v. Flying Burrito, L.L.C., 647 F.3d 741, 745 (8th Cir. 2011).  Plaintiff must make a prima facie showing that personal jurisdiction exists, "to support a reasonable inference that the defendant can be subject to jurisdiction."  K-V Pharmaceutical Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 592–93 (8th Cir. 2011) (quoting Dever, 380 F.3d at 1072) (internal quotation marks omitted).  Since it is only a prima facie showing, the evidentiary standard is minimal.  Id. at 592.  In addition, the Court "view[s] the evidence in the light most favorable to the plaintiff and resolve[s] all factual conflicts in [the plaintiff's] favor in deciding whether the plaintiff made the requisite showing."  Id.

Trustee presents several exhibits in support of its Resistance to Defendant's Motion to Dismiss and Resistance to Defendant's Motion for Summary Judgment.  However, these exhibits

6

are directed more toward the Resistance to Defendant's Motion for Summary Judgment than Defendant's Motion to Dismiss. Nonetheless, the Court will consider all of the information provided to make its determination.

### a. Defendants Are Subject to the Personal Jurisdiction of This Court

If Defendant received a valid summons, a bankruptcy court need only establish that the implementation of jurisdiction is "consistent with the Constitution and the laws of the United States." Fed. R. Bankr. P. 7004(f). Therefore, Plaintiff must show that minimum contacts exist within the forum and that jurisdiction would not offend "traditional conceptions of fair play and substantial justice." K-V Pharmaceutical, 648 U.S. at 592 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477–78 (1985)). The Eighth Circuit has definitively decided that in bankruptcy courts, the minimum contacts question relates to whether minimum contacts exist with the United States, not the particular State in which that court sits. See In re Federal Fountain, Inc., 165 F.3d 600, 602 (8th Cir. 1999). In In re Federal Fountain, the Eighth Circuit specifically states:

> that the fairness that due process of law requires relates to the fairness of the exercise of power by a particular sovereign, and there can be no question that the defendant has sufficient contacts with the United States to support the fairness of the exercise of jurisdiction over him by a United States court.

Id. (quoting Fitzsimmons v. Barton, 589 F.2d 300, 333 (7th Cir. 1979)); see also Clune v. Alimak AB, 233 F.3d 438, 541–43 (8th Cir. 2000) (applying the minimum contacts analysis to foreign company).

Because the parties have focused on Goldsmith's contacts with Iowa, instead of the United States, there is not much of a record on the relevant question. However, the limited evidence relevant to the question establishes that there is little doubt Goldsmith has sufficient minimum contacts with the United States.

7

Goldsmith admits he contracted with Debtor and, at least on a "handshake basis," received checks from Debtor. At a minimum, he communicated with the Rubashkin family in New York as a representative of St. George. He claims to have communicated with Rubashkin representatives frequently, negotiated fees, and sent invoices to Debtor. Goldsmith claims he has only visited the United States once since 2011. However, he certainly does business regularly with United States companies. At a minimum, he claims a longstanding relationship with the Rubashkin family and doing substantial business over the years.

Goldsmith also fails to note the connection between the cause of action asserted and his contacts with the United States. All of his contacts that Trustee cites relate directly to this adversary proceeding. He admits receiving payments from Debtor, claims he had a longstanding relationship to Debtor, and claims to have billed Debtor and been paid in a regular and ordinary course of business. The Court finds this all establishes sufficient minimum contacts between Goldsmith and the United States.

    **b.    Defendant Waived the Personal Jurisdiction Defense**

Even if this Court lacks personal jurisdiction, Defendant waived that objection by materially participating in the litigation process. In <u>Ins. Corp of Ir. v. Compagnie des Bauxites de Guinee</u>, 456 U.S. 694 (1982), the Supreme Court explained that personal jurisdiction flows from the Due Process Clause, and the jurisdictional restriction is a protection of personal liberty. <u>Id.</u> at 702–03. Individuals can waive personal jurisdiction as they waive many other personal liberties. <u>Id.</u> at 703.

A defendant waives a personal jurisdiction defense where the defendant fails to include the defense "in a responsive pleading." <u>See</u> Fed. R. Bankr. P. 7012(b) ("Rule 12") (explaining that Fed. R. Civ. P. 12(b)–(i) applies in adversary proceedings). However, Rule 12 "sets only the

outer limits of waiver; it does not preclude waiver by implication." Yeldell v. Tutt, 913 F.2d 533, 539 (8th Cir. 1990) (quoting Marquest Med. Prods., Inc. v. EMDE Corp., 496 F. Supp. 1242, 1245 n.1 (D. Colo. 1980)).

A defendant can also waive a personal jurisdiction defense when it does not "properly preserve[]" the defense, even after asserting it in an answer. See Alger v. Hayes, 452 F.2d 841 (8th Cir. 1972). That is, a defendant may waive personal jurisdiction where it technically complied with the requirements of Rule 12, but it still violated the "spirit" of the law. Network Prof'l, Inc. v. Network Int'l, Ltd., 146 F.R.D. 179, 184 (D. Minn. 1993). For example, the defendant can waive the personal jurisdiction defense by significantly participating in the litigation. See, e.g., Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 168 (1964) ("Being a privilege, it may be lost. It may be lost by failure to assert it seasonably, by formal submission in a case, or by submission through conduct."); Yeldell, 913 F.2d 533; Alger v. Hayes, 452 F.2d 841, 842–43 (8th Cir. 1972) ("Lack of jurisdiction over the person, however, is a personal defense which may be waived if not timely asserted or properly preserved thereafter."); see also Cont'l. Bank N.A. v. Meyer, No. 88 C 8197, 1991 WL 181117 (N.D. Ill. Sept. 9, 1991) (citing cases). Appearance before the court can also amount to a waiver of personal jurisdiction. See Ins. Corp. of Ir. 456 U.S. at 703; Carlson v. Hyundai Motor Co., 164 F.3d 1160, 1163 (8th Cir. 1999); see also Gerber v. Rioan, 649 F.3d 514, 520 (6th Cir. 2011); Baragona v. Kuwait Gulf Link Transp. Co., 594 F.3d 852, 854 (11th Cir. 2010). Specifically, a "motion to permit the defendants' New York attorney[] to appear in this court pro hac vice" is additional evidence of submission to the jurisdiction of this Court. First Bank Bus. Capital, Inc. v. Agriprocessors, Inc., 602 F. Supp. 2d 1076, 1092 (N.D. Iowa 2009) (discussing with approval Manchester Knitted Fashions, Inc. v. Amalgamated Cotton Garment & Allied Indus. Fund, 967

9

F.2d 688 (1st Cir. 1992)).  Securing local counsel may also be an indication that a defendant submits to the jurisdiction of the court.  See id.

There is, of course, "a strong public policy to conserve judicial time and effort." Wyrough & Loser, Inc. v. Pelmor Labs., Inc., 376 F.2d 543, 547 (3rd Cir. 1967).  As such, this Court also considers the amount of time spent in the course of litigation as a significant factor. See TLC Vision (USA) Corp. v. Freeman, No. 4:12CV01855 ERW, 2013 WL 2181267, at *7 (E.D. Mo. May 20, 2013) (citing Knowlton v. Allied Van Lines, Inc., 900 F.2d 1196, 1199 (8th Cir. 1990)).  Rule 12 is "intended to avoid delay and to simplify federal court proceedings." Network Prof'ls, Inc. v. Network Intern. Ltd., 146 F.R.D. 179, 184 (D. Minn. 1993).  "Whether a defendant has waived his right to challenge venue is an issue that rests within the wide discretion of the district court."  First Bank Bus. Capital, Inc. v. Agriprocessors, Inc., 602 F. Supp. 2d at 1091.

Defendant included the personal jurisdiction defense in their answer as their seventeenth defense.  Nonetheless, since January 12, 2012, Defendant filed an Answer, a Statement of Corporate Ownership, a Motion to Continue Hearing, a Motion to Appear Pro Hac Vice, four Motions to Extend Discovery Deadlines, a Motion to Extend Time to File Dispositive Motions and Pre-Trial Statements, a Pretrial Statement, and before filing this motion,  a Reply to Trustee's Resistance to the Motion to Dismiss and Motion for Summary Judgment.  More significantly, Defendant also participated in a scheduling conference, a deposition in New York, and engaged in written discovery for roughly a year and a half.  Defendant secured counsel both in Iowa and in New York.  Apart from a sentence in their Answer and this motion, Defendant gave no indication that he did not intend to subject himself to this Court's jurisdiction.  In short, Defendant spent a year and a half allowing the parties and this Court to move forward in this far-

10

reaching and complex bankruptcy proceeding. Therefore, at an absolute minimum, Defendant violated the "spirit" of Rule 12 by participating extensively in the course of the litigation, waiving his personal jurisdiction defense.

## II. Defendant's Motion for Summary Judgment

Goldsmith also moved for Summary Judgment. He asserted that the disputed transfers fail to meet the criteria for fraudulent transfers as defined by 11 U.S.C. § 548 because he provided value—Glatt Kosher slaughtering services—to Debtor. Defendant also argues that, to the extent the Trustee is attempting to avoid and recover the transfers as preferential transfers under 11 U.S.C. § 547, Debtor made the transfers in the ordinary course of business, which is a complete defense. Trustee urges that there are genuine disputes of material fact; therefore, summary judgment is not appropriate.

### a. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movement is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056 (applying Fed. R. Civ. P. 56 to adversary proceedings). Substantive law determines which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A material fact dispute is one that "might affect the outcome of the suit." Id. An issue is genuine when reasonable minds could differ as to the verdict of the case because of that issue. Id. at 251–52 (explaining that the facts cannot be "so one-sided that one party must prevail as a matter of law"). At this point in the litigation, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249.

While the movant must point out that there is no genuine issue of fact, "[t]he non-moving party then must set forth specific facts showing a genuine issue of material fact for trial." In re Paul, 488 B.R. 104, 106 (B.A.P. 8th Cir. 2013) (citing Anderson, 477 U.S. at 256.) That is, defeating summary judgment here requires the Trustee to "present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial." F.D.I.C. v. Bell, 106 F.3d 258, 263 (8th Cir. 1997) (quoting Rolscreen Co. v. Pell Prods. of St. Louis, Inc., 64 F.3d 1202, 1211 (8th Cir. 1995)). The Court will view the facts and make "all reasonable inferences in the light most favorable to the nonmoving party." Reed v. City of St. Charles, Mo, 561 F.3d 788, 790 (2009).

### b.    Genuine Issues of Material Fact Exist Regarding Trustee's Fraudulent Transfers Claims

During the hearing on this Motion for Summary Judgment, the Court noted its skepticism about the fraudulent transfer claims. This was based mainly on Goldsmith's counsel's insistence that value was provided to Debtor in the form of Glatt Kosher slaughtering services. After carefully considering the evidence presented in this motion, however, the Court determines that there are genuine issues of material fact that are appropriate to consider at trial.

Trustee has presented evidence that the disputed transfers were not exchanged for reasonably equivalent value. Sullivan v. Schultz (In re Schultz), 368 B.R. 832, 836 (Bankr. D. Minn. 2007) (citing Meeks v. Don Howard Charitable Remainder Trust (In re S. Health Care of Ark., Inc.), 309 B.R. 314, 319 (B.A.P. 8th Cir. 2001)). Where there is no evidence of actual fraud, Trustee must show that Debtor received less than "reasonably equivalent value" and was insolvent on the date of, or as the result of, the disputed transfers. 11 U.S.C. § 548(a)(1) (2012); see also Quad City Bank v. Berstler (In re Chapman Lumber Co.), Bankr. No. 05-00408, Adv. No. 06-09112, 2007 WL 2316528, at *3 (Bankr. N.D. Iowa Aug. 8, 2007). Section 548(d)(2)

12

defines value as "property, or satisfaction or securing of a present or antecedent debt of the debtor."

Whether Debtor received "reasonably equivalent value" is generally a fact question. See Kaler v. Able Debt Settlement, Inc. (In re Kendall), 440 B.R. 526, 532 (B.A.P. 8th Cir. 2010) (citing In re Ozark Rest. Equip. Co., 850 F.2d 342, 344 (8th Cir. 1988)). The Court inquires as to whether "(1) value was given; (2) it was given in exchange for the transfers; and (3) what was transferred was reasonably equivalent to what was received." In re Schultz, 368 B.R. at 836; see also Stalnaker v. Gratton (In re Rosen Auto Leasing, Inc.), 346 B.R. 748, 805 (8th Cir. 2006). "There is no bright line rule used to determine when reasonably equivalent value is given." In re Schultz, 368 B.R. at 836 (quoting Linquist v. JNG Corp. (In re Lindell), 334 B.R. 249, 255–56 (Bankr. D. Minn. 2005)) (internal quotation marks omitted). The Court considers "the whole transaction and measure[s] all the benefits." In re S. Health Care of Ark., Inc., 309 B.R. at 319. Specifically, the Court considers the service's market value to determine whether Debtor received reasonably equivalent value. See Hanrahan v. Herz (In re Herz), Bankr. No. 08-00412, Adv. No. 08-09062, 2009 WL 1107744, at *2 (Bankr. N.D. Iowa Apr. 23, 2009) (citing In re Ozark Rest. Equip. Co., 850 F.2d at 344–45).

Trustee does not argue actual fraud but argues only that there is no evidence that Debtor received reasonably equivalent value for the transfers. Neither party disputes that Debtor made transfers—a series of payments—to Goldsmith. Trustee argues Debtor received **no** value for the payments. Trustee points out, at best, the meat actually went to A.A. Rubashkin & Sons in New York—the third party who is listed on the invoices in evidence. Transfers to a third-party do not establish reasonably equitvalent value. Dietz v. St. Edwards Catholic Church (In re Bargfrede), 117 F.3d 1078, 1080 (8th Cir. 1997).

13

Goldsmith relies on the deposition of Yossi Rubashkin where he stated that Debtor paid the freezer bills for Colonia's shipping destination—a public warehouse in New York—and then got some of the meat. He does not explain why the invoices are addressed to an entity other than Debtor or even how the transactions were set up. His deposition testimony is unclear and contradictory. At a minimum, a question remains whether Debtor got any product at all, and if so, how much and was it worth the amount Debtor paid.

### c. Genuine Issues of Material Fact Exist Regarding Trustee's Preferential Transfer Claims

Defendant first argues that Debtor made the disputed transfers in the ordinary course of business, which is a complete defense to a preferential transfer claim. "Under the Bankruptcy Code's preference avoidance section, 11 U.S.C. § 547, the trustee is permitted to recover, with certain exceptions, transfers of property made by the debtor within 90 days before the date the bankruptcy petition was filed." Wells Fargo Home Mortg., Inc. v. Linquist, 592 F.3d 838, 842 (8th Cir. 2010) (quoting Barnhill v. Johnson, 503 U.S. 393, 873 (1992)) (internal quotation marks omitted). An ordinary course of business transaction falls into one of these exceptions; Trustee cannot avoid a transfer made for a debt that the debtor incurred and paid in the ordinary course of business. 11 U.S.C. § 547(c)(2) (2012). The ordinary business exception attempts to "leav[e] normal financial relations undisturbed." Schnittjer v. Pickens (In re Pickens), Bankr. No. 06-01120, Adv. No. 06-09166, 2008 WL 63251, at *3 (Bankr. N.D. Iowa Jan. 3, 2008) (citing In re Armstrong, 291 F.3d 517, 527 (8th Cir. 2002)).

The statute explicitly states that in making the "ordinary course of business" determination, the Court can look to either the relationship between the debtor and transferee or "according to ordinary business terms." 11 U.S.C. § 547(c)(2); see also Walterman Implement, Inc. v. Grundy Co. Farm Serv. Agency (In re Walterman Implement, Inc.), Bankr. No. 05-07284,

14

Adv. No. 07-09039, 2007 WL 4224041, at *2 (Bankr. N.D. Iowa Nov. 27, 2007) (citing In re U.S.A. Inns of Eureka Springs, AR, Inc., 9 F.3d 680, 684–85 (8th Cir. 1993)) (explaining that one prong is subjective while the other is objective as measured by the industry as a whole). At trial, the defendant has the burden to prove that the transactions occurred in the ordinary course of business by a preponderance of the evidence. 11 U.S.C. § 547(g); see also ContinentalAFA v. Human Resource Staffing (In re ContinentalAFA Dispensing Co.), 451 B.R. 888, 893 (Bankr. E.D. Mo. 2011).

As part of the subjective inquiry under § 547(c)(2)(A), the Court conducts a "peculiarly factual analysis," comparing the disputed transactions with prior transactions between the parties. Barnes v. Karbank Holdings (In re JS & RB, Inc.), 446 B.R. 350, 359 (Bankr. W.D. Mo. 2011) (quoting Lovett v. St. Johnsbury Trucking, 931 F.2d 494, 497 (8th Cir. 1991)). The Court considers several factors in its analysis of the transaction history between the parties:

> (1) the length of time the parties were engaged in the transactions at issue; (2) whether the amount or form of the tender differed from past practices; (3) whether the creditor of the debtor engaged in any unusual collection or payment activity; and (4) whether the creditor took advantage of the debtor's deteriorating financial condition.

ContinentalAFA, 451 B.R. at 893 (quoting Concast Canada, Inc. v. Laclede Steel Co., (In re Laclede Steel Co.), 271 B.R. 127 (B.A.P. 8th Cir. 2002) (internal quotation marks omitted). Nonetheless, the payment could be a first-time transaction while still qualifying for the ordinary business exception, but it "must be typical compared to both parties' past dealings with similarly-situated parties." In re Pickens, 2008 WL 63251, at *3 (citing Wood v. Stratos Prod. Dev. (In re Ahaza Sys., Inc.), 482 F.3d 1118, 1125 (9th Cir. 2007); Kleven v. Household Bank F.S.B., 334 F.3d 638, 643 (7th Cir. 2003)). Many courts have concluded that the ordinary course of business exception's fact-intensive nature requires that the Court generally refrain from deciding the issue until after trial. See, e.g., McDonald v. Little Limestone, Inc. (In re Powers

Lake Const. Co.), 482 B.R. 803, 808 (Bankr. E.D. Wis. 2012); Buchwald v. Williams Energy Mktg. & Trading Co. (In re Magnesium Corp. of Am.), 460 B.R. 360, 366 (Bankr. S.D.N.Y. 2011); Simon v. Gerdau MacSteel, Inc. (In re Am. Camshaft Specialties, Inc.), 444 B.R. 347, 363 (Bankr. E.D. Mich. 2011); Alexander v. Delong, Caldwell, Novotny, & Bridgers, LLC (In re Terry Uniform Co., LLC), 358 B.R. 429, 435 (Bankr. M.D. Ala. 2006).

This Court is equally hesitant to decide such a fact-intensive inquiry on summary judgment. Neither party addressed their ordinary course of business arguments to any meaningful degree in oral argument. The record submitted on this point only confirms the fact-intensive and complicated nature of this issue. Goldsmith asks the Court to consider the substantial past dealings between Debtor and Defendant. Marc Ross, the Trustee's representative, states that there was a past history. Defendant provided only four invoices as evidence of this relationship, and none of them were addressed to Debtor—Agriprocessors. Defendant states that his relationship with Debtor extends beyond these invoices, but has provided no evidence to support that claim. Since there is virtually no evidence of this relationship, the Court is also unable to determine the normal billing and payment cycle, let alone whether they showed the payments met this normal pattern. Goldsmith offered no objective evidence of ordinary business terms in the industry. None of this provides undisputed evidence of in-depth facts that the Eighth Circuit and § 547 requires. Genuine issues of material fact exist on this issue and the Court cannot grant summary judgment for Defendant on the preferential transfer claims.

**WHEREFORE**, Defendants' Motion to Dismiss based on lack of personal jurisdiction is DENIED.

**FURTHER**, Defendants' Motion for Summary Judgment on all claims as to Defendant Fime-Pak is GRANTED.

**FURTHER**, Defendants' Motion for Summary Judgment on all claims as to Defendant Goldsmith is DENIED.

Dated and Entered: October 21, 2013

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE